IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH WATSON | : | CIVIL ACTION |
|     Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| SUPERINTENDENT ROZUM et al., | : | |
|     Respondent | : | NO. 08-1650 |

### REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS                                                              June 26, 2008
UNITED STATES MAGISTRATE JUDGE

      Presently before the court is a Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Joseph Watson, ("Petitioner"), currently incarcerated at the State Correctional Institution in Somerset, Pennsylvania, seeks habeas relief based on claims of conspiracy, denial of appellate rights, prosecutorial misconduct, ineffective assistance of counsel and obstruction of justice.  The Honorable J. Curtis Joyner referred this matter to the undersigned for preparation of a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, it is recommended that Petitioner's time-barred habeas claims be DISMISSED on procedural grounds without an evidentiary hearing.

### I. FACTUAL AND PROCEDURAL HISTORY[1]

      The Pennsylvania Superior Court explained the facts surrounding Petitioner's conviction as follows:

> In August of 1998, [Petitioner] approached the victim, asked
> if she "partied" and if she had "a tool."[2] [Petitioner] promised the

---

[1] The facts set forth in this background and procedural history were gleaned from Petitioner's Habeas Corpus Petition and the Commonwealth's response, inclusive of all exhibits thereto.
[2] A "tool" is a device used to smoke crack cocaine.

victim crack in exchange for sex. They ultimately agreed and she accompanied him to a house owned by her friend, Tony Castaba. [Petitioner] allegedly locked the doors and windows of the furnished garage apartment in Castaba's home, grabbed the victim and started choking her with both of his hands. The victim, who is asthmatic, could not breathe. After [Petitioner] threatened to kill the victim, she urinated on her clothes and blacked out. After regaining consciousness, [Petitioner] told to the victim to remove her clothes, he tied the drawstring from his sweat[]pants around the victim's neck, removed her clothes and anally raped her. When he was finished, he released the string around the victim's neck, apologized, and said "you're going to hate me." He told the victim that if she moved, he would kill her. He then left the apartment.

After a few minutes, the victim walked to her friend's (Jocelyn Stevens) house visibly upset, distraught and scared. She had red marks around her neck, red blotches on her face, her tongue was swollen and hanging out of her mouth, her clothes were urine-stained and torn and her eyes were bloodshot and puffy. She told Stevens about meeting [Petitioner] and how the evening ended with him sexually assaulting her. Ashamed of being raped, the victim did not immediately report the incident to anyone else, including the authorities. The victim did visit a local health center affiliated with the Catholic Church six days after the alleged attack. There she received medical treatment after telling a nurse that she had been assaulted.

About seven weeks after the incident, the victim waved down a police officer on patrol, explaining that the man who had raped her was walking down the street. She pointed to [Petitioner]. The officer called out to [Petitioner] and then approached him. When asked to sit in the back of the patrol care, [Petitioner] fled. [Petitioner] was ultimately chased down and apprehended by two other officers who had been alerted to [Petitioner's] flight. The victim subsequently identified [Petitioner] as her attacker. He was ultimately arrested.

*Commonwealth v. Watson*, No. 1465 EDA 2005, mem. op. at 2-3 (Pa. Super. Ct. Sept. 29, 2006);

Commonwealth Exhibit ("Com. Ex.") B at 2-3.

Following a jury trial, Petitioner was convicted of involuntary deviate sexual intercourse (IDSI), aggravated assault and possessing an instrument of a crime (PIC). Com. Ex. B at 1. Petitioner was sentenced to 22 ½ to 45 years of incarceration and a fine of $50,000.00. *Id.* Petitioner

filed an appeal and requested to proceed *pro se*. Response ("Resp.") at 3. The Pennsylvania Superior Court remanded the matter to the trial court for a hearing to determine whether, under Pennsylvania law, Petitioner's waiver of appellate counsel was knowingly and voluntary. *Id*. The trial court, under the direction of the Pennsylvania Superior Court, appointed counsel. *Id*. On September 12, 2003, the Pennsylvania Superior Court dismissed two of Petitioner's claims under Pa. R. App. P. 1925(b) for failure to file a concise statement of matters complained of on appeal. *Commonwealth v. Watson*, No. 3150 EDA 2000, mem. op. at 1 (Pa. Super. Ct. Sept. 12, 2003); Com. Ex. A at 1. Also, the Superior Court rejected Petitioner's claim that his sentence was illegal and found that his two claims of ineffective assistance of counsel were premature and should be presented for collateral review to the lower court. *Id*. at 3. Petitioner did not seek allocator from the Pennsylvania Supreme Court.

On April 15, 2004, Petitioner, *pro se*, filed a petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541 *et seq*. Resp. at 7. On May 15, 2005, the PCRA court denied Petitioner's PCRA petition. *Id*. at 4, 8. Petitioner, represented by counsel, appealed the PCRA denial and, on September 29, 2006, the Pennsylvania Superior Court denied his appeal. Com. Ex. B at 1. The state Supreme Court declined review on April 13, 2007. *Commonwealth v. Watson*, (Pa. 2007) (table); Com. Ex. C.

On March 30, 2008,[3] Petitioner filed the instant petition for federal habeas corpus relief. He initially asserted five claims:

> Ground One - Petitioner was illegal[ly] arrested, without probable cause and authorization on Nov. 8[,] 1998 in violation of his 4th and

---

[3] A *pro se* prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court. *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998). Petitioner's habeas petition was docketed on April 7, 2008. However, since Petitioner signed his habeas petition on March 30, 2008, this court will assume that he delivered it to prison officials for mailing on that date.


> 14th Amend[ment] rights to the Constitution.
>
> Ground Two - trial prosecutor collaborated with trial Judge and counsel to conspire to violate Petitioner['s] Constitutional rights to a fair trial violating his 6th and 14th Amend[ment] [rights].
>
> Ground Three - Petitioner received no assistance from his trial counsel who conspire[d] with trial prosecutor to convict his own client [] [which is a] 6th and 14th Amend[ment] violation.
>
> Ground Four - Petitioner stated the above violation and conspirators involvement on the record of sentencing, [the] Government collaborated with Appellate Counsel's to violate Petitioner['s] Constitutional rights to appeal.
>
> Ground Five - Petitioner['s] two Appellate Court appointed Counsel [were] collaborating with the Government who interfere[d] in Counsel's present[ation of] [evidence] [in violation of] the 4th and 14th Amend[ment] [] and [decided] to waive Petitioner issues of Constitution violation.

Petition ("Pet.") at 9-10.  Petitioner included ten additional claims in his Supplemental Brief for

Habeas Corpus ("Pet'r Brief"):

> Ground One - Whether Petitioner[']s exposure on the record at his sentencing May 19, [2000] and re[-]sentencing September 22, [2000] of the corruption that occurred in his jury trial by the trial prosecutor collaborated with trial judge and counsel to violate Petitioner['s] rights and conspire to present fraud and encourage perjure[d] testimony, conceal fraud and forge signatures of official[s] on documents.  Whether that is the result[] of Petitioner be[ing] prevented from appealing, that resulted in procedural default, which is the reason [a] trial constitutional violation has never been raise[d] on appeal was the result of interference by Government officials.
>
> Ground Two - Whether the Government collaborated with second court[-]appointed appellate counsel Raymond D. Roberts to waive Petitioner[']s reinstatement of his appellate rights.
>
> Ground Three - Whether the Government interfered in Petitioner obtaining the post trial and trial transcript to adequately prosecute his appeal.

Ground Four - Whether the Government collaborated with first court[-]appointed appellate counsel[] Henry Schober to waive Petitioner[']s appe[llate] rights [due to his] failure to file a 1925(b) [concise statement of matters complained of on appeal] after Petitioner file[d] his own notice of appeal.

Ground Five - Whether the Government conspire[d] at Petitioner[']s preliminary arraignment to violate Petitioner['] s constitutional rights and present fraud on the [record] to get an indictment from the court.

Ground Six - Whether trial prosecutor collaborated with defense counsel on July 14[,] 1999 [] to have officer David Smith make out a medical report for trial and [] present[ing] that fraud to the jury, Petitioner informed the trial judge, and the proceeding [was] postpone[d] and new counsel appointed.

Ground Seven - Whether thereafter the Government collaborate[d] with Philadelphia prison officials at C.F.C.F. Prison to prevent Petitioner from making any phone calls until the fraud was presented at trial and he was found guilty of it.

Ground Eight - Whether trial prosecutor committed prosecutorial misconduct [by having the] trial judge and counsel conspire and present[] the fraud on the second day of [Petitioner's] jury trial therefore Petitioner couldn't postpone it [as] he had done prior, and did the prosecutor commit misconduct, encourage and present[] known perjur[ed testimony] from witnesses, invent[] a medical center [report] corroborated by perjury and it doesn't exist, dispose[] of the recantation statement, present[] the fraud affidavit warrant criminal complaint as a valid document, collaborate[] with defense counsel to withhold impeachment documents against his witnesses, collaborate[] with counsel to investigate for the Commonwealth which obtained pictures, had counsel participate in preparing the fraud then stipulate to [] it, suppress[] rebuttal evidence that would h[ave] impeach[ed] his witnesses to present fraud then lie on the record, had a witness perjure herself for a deal.

Ground Nine - Whether Petitioner was denied any assist[ance] altogether from counsel.

Ground Ten - Whether [the] trial judge obstructed justice [by] interfer[ing] in the impeachment of the Commonwealth witnesses [by Petitioner's counsel], to expose the fraud.

Pet'r Brief at 3-4. The Commonwealth contends that Petitioner's claims should be dismissed as untimely. Resp. at 7-13. This court agrees.

## II. DISCUSSION
### A. The AEDPA Period of Limitations

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") was enacted; it imposes a one year period of limitations ("AEDPA year") for filing habeas corpus petitions. *See* 28 U.S.C. § 2254 (d)(1). The AEDPA time period begins to run on the latest of the following:

> (A) the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). The Third Circuit has held that the starting date for the habeas period of limitations must be determined separately for each cognizable claim contained in the petition. *See Fiedler v. Varner*, 379 F.3d 113, 117-18 (3d Cir. 2004).

The usual starting date for the habeas period of limitations, as provided by 28 U.S.C. § 2244(d)(1)(A), is the date a conviction becomes final on direct appeal. *See Fiedler*, 379 F.3d at 116. Based on the procedural history summarized earlier, Petitioner's conviction became final on or about

October 13, 2003,[4] the expiration of the deadline for Petitioner to timely seek review in the Pennsylvania Supreme Court. Petitioner does not argue that any of his claims implicate alternative starting dates in 28 U.S.C. § 2244(d)(1), hence, his AEDPA year commenced, for all of his claims, on October 13, 2003.

Petitioner had one year, or until October 13, 2004, to seek federal habeas relief. The present federal habeas petition was not filed until March 30, 2008, more than three (3) years after the expiration of Petitioner's AEDPA deadline. Therefore, the instant petition is untimely and, unless a tolling exception applies, time-barred.

**B.      Statutory Tolling**

If, prior to the expiration of his full AEDPA year, Petitioner timely sought collateral review, "[t]he time during which [that] properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim [was] pending [should] not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2); *see generally Artuz v. Bennett*, 531 U.S. 4, 9 (2000).

On April 15, 2004, after one hundred and eighty-five (185) days of Petitioner's AEDPA year had elapsed, he filed his PCRA petition. This left Petitioner with one hundred and eight (180) AEDPA days remaining after his state collateral relief action ceased to be pending on April 13, 2007, the date the Pennsylvania Supreme Court denied his petition for *allocatur*.[5] Petitioner had to file his federal habeas petition on or about October 10, 2007 to be deemed timely. Instead, Petitioner filed

---

[4]Since the deadline for Petitioner to timely seek review in the Pennsylvania Supreme Court was a Sunday, October 12, 2003, his filing deadline was extended until the next business day, Monday, October 13, 2003. Hence, his AEDPA year commenced October 13, 2003.

[5]The AEDPA period was not tolled during the ninety (90) day period after April 13, 2007, when Petitioner could have filed a petition for writ of certiorari in the United States Supreme Court. *See Lawrence v. Florida*, 127 S. Ct. 1079 (2007) (holding that the limitations period does not toll under 28 U.S.C. § 2244 (d)(2) during a pendency of a *certiorari* petition in the United States Supreme Court).

his petition on March 30, 2008, one hundred and seventy-two days after the expiration of his AEDPA year. Therefore, unless Petitioner qualifies for equitable tolling, his habeas petition must be dismissed as time-barred.

**C.     Equitable Tolling**

The Third Circuit has held that the one-year period of limitations contained in § 2244(d)(1) does not impose a jurisdictional bar. *See Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 617-18 (3d Cir. 1998). Thus, district courts may equitably toll the one-year period of limitations when the "principles of equity would make [the] rigid application [of a limitation period] unfair." *Id.* at 617. This doctrine will be sparingly invoked, *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d. Cir. 1999), "'only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice.'" *LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005) (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)). To merit equitable tolling, Petitioner must establish two general requirements:

> (1) that "the petitioner has in some way been prevented from asserting his rights [due to extraordinary circumstances];" and (2) that the petitioner has shown that "he or she exercised reasonable diligence in investigating and bringing the claims."

*Merritt v. Blaine*, 326 F.3d 157, 168 (3d Cir. 2003) (quoting *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001)). Inasmuch as Petitioner is not a capital defendant, he must satisfy both of these mandates. *See Merritt*, 326 F.3d at 168-70.

Petitioner herein is not entitled to equitable tolling as set forth in *Merritt*. He alleges that Government officials conspired to limit his telephone access while he was incarcerated during his trial. Pet'r Brief at 3-4. He further asserts that the trial judge and his court-appointed counsel

conspired to delay his receipt of his trial transcripts during his state court proceedings. *Id.* at 3-4,5. However, he has not adduced any proof that the respondents actively misled him, or that they, in any extraordinary way, prevented him from asserting his federal rights in a timely manner. Also, Petitioner has not demonstrated that he exercised "reasonable diligence" in investigating and pursuing his federal claims, inasmuch as, he delayed more than five months beyond the statutory deadline on or about October 10, 2007, to file his habeas corpus petition. The record, thus, is devoid of factual justification for equitable tolling. Moreover, Petitioner has not convinced this court that "rigid application of the statute would be unfair." *Fahy*, 240 F.3d at 245. Accordingly, equitable tolling should be denied and Petitioner's time-barred habeas petition should be dismissed.

### III. CONCLUSION

Petitioner's claims are time-barred. Reasonable jurists would not debate the appropriateness of the court's procedural disposition of his claims; therefore, a certificate of appealability should not issue. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, I make the following:

**RECOMMENDATION**

AND NOW, this 26th day of June, 2008, for the reasons contained in the preceding report, it is hereby RECOMMENDED that petitioner's time-barred claims be DISMISSED, without an evidentiary hearing. Petitioner has neither met statutory requirements nor shown equitable reasons to overcome AEDPA's time bar and to entitle him to a decision on the merits. Moreover, Petitioner has not established that any reasonable jurist could find this procedural ruling flawed. Therefore, a certificate of appealability should not be issued.

Petitioner may file objections to this Report and Recommendation within ten (10) days of being served with a copy of it. *See* Local R. Civ. P. 72.1(IV). Failure to file timely objections may constitute a waiver of any appellate rights.

It be so **ORDERED.**

*/s/ Carol Sandra Moore Wells*
CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE